```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 03-14270-CIV-MOORE
                                    MAGISTRATE JUDGE P. A. WHITE
PERRY T. HILTON,             :

     Plaintiff,              :

v.                           :          REPORT OF
                                        MAGISTRATE JUDGE
CAPTAIN REESE, et al.,       :

     Defendants.             :
_____
```

### I.   INTRODUCTION

Plaintiff Perry T. Hilton is a multiple filer, well known to the Court, who has had 10 cases in this District, and appeals in a number of those actions.[1]

---

[1]   Hilton's cases and appeals therefrom are as follows:

1.  Hilton v. Martinez, et al.
    96-946-Civ-Graham
    §1983; Dade Case No. 84-21439.
    Dismissed, Heck v. Humphrey, 5/9/96.

2.  Gonzalez and Hilton v. Pardue, et al.
    96-983-Civ-Ferguson
    §1983; Confusing claims.
    Dismissed 11/26/96, failure to file fee or documentation
         for motion to proceed in forma pauperis.

3.  Hilton v. Singletary
    98-1022-Civ-Ungaro-Benages
    §2254; attacking Dade Case No. 84-21439.
    Dismissed as time barred 8/6/98.
    Affirmed, USCA Case #98-5342, 11/22/99.

4.  Hilton v. Moore, et al.
    00-14009-Civ-Middlebrooks
    §1983; Conditions at Okeechobee C.I.
    Dismissed, failure to comply with rules, 9/19/00.
    Appeal #00-15385-D dismissed as frivolous, 4/3/01.

5.  Hilton v. Moore
    00-3571-Civ-Huck
    §2254; attacking Dade Case No. 84-21439.
    Dismissed as successive, 28 U.S.C. §2244, 8/6/01.
    USCA #01-14951-B, Certificate of Appealability
         denied, no substantial showing of denial of
         constitutional right, §2253(c)(2), 11/28/01.

6.  Hilton v. Moore, et al.
    01-14148-Civ-Roettger
    §1983; Multiple claims.
    Final Order 6/17/03; granting MSJ on merits as to
         retaliatory confinement; dismissing claim of

In this case, some claims survived summary judgment, and others did not (see Partial Final Judgment, DE#122; and Reports

---

        retaliatory denial of food, as unexhausted; and dismissing unserved defendants under Rule 4(m).
        Appeal #03-13492-DD, Affirming judgment on retaliatory confinement, and denial of food; but Remanding for further proceedings on claim against 4 defendants concerning visitation which had been dismissed on initial screening as *de minimis*.
        Matter Re-referred; service ordered for 4 defendants returned unexecuted, Report recommending dismissal pursuant to Rule 4(m).
        Notice of Voluntary Dismissal, 7/13/06 (settlement)
        Order of Dismissal, with Prejudice, 7/26/06.

7.   Hilton v. Office of State Atty.
     01-2481-Civ-Seitz
     FOIA; Records from State Atty.
     Order of Dismissal, failure to state a claim, state agencies not subject to FOIA, 8/5/02.
     Final Judgment, 9/4/02.
     Appeal #02-14559-E; Affirmed 3/4/03, Mandate 4/2/03.

8.   Hilton v. Reno, et al.
     01-2560-Civ-King
     §1983; Breach of contract re plea agreement.
     Dismissed, Heck v. Humphrey, 8/9/01.
     Motion/reconsideration denied, 12/20/02.
     Appeal #03-10305-C, dismissed 6/12/03, as frivolous.

9.   Hilton v James Crosby, et al.,
     03-20879-Civ-King
     §1983; Violations at Okeechobee CI.
     Interlocutory Appeal #03-13493-E; dismissed 8/8/03
     Interlocutory Appeal #04-10026-J; dismissed 2/9/04
     District Court dismissal, under Rule 4(m) 4/30/04
     **Appeal #04-15065-B; with $250 Filing fee from 10/5/04**
     Appeal #04-12510-B; dismissed as frivolous 3/3/05

10.  Hilton v. Reese, et al.,
     03-14270-Civ-Moore
     §1983; Violations at Okeechobee CI
     Interlocutory Appeal 04-10029-C, dismissed 2/10/04
     Notice of Voluntary Dismissal, 7/10/06 (settlement)
     Order of Dismissal, with prejudice, 7/12/06.
     3/26/08 Motion for Writ of Execution (plaintiff dissatisfied; seeks additional compensation under the settlement, so he can pay lien posted in 2008 on his prison bank account for an appellate Court filing fee from 2004).

DE#s 119, 120).[2] Trial was set for July 10, 2006 (see Notice, DE# 127). Plaintiff Hilton and the defendants entered into an agreement under which this and another federal case were settled; and upon Hilton's "Notice of Voluntary Dismissal With Prejudice" (DE#142, dated 7/10 and docketed 7/12/06), the Honorable K. Michael Moore, United States District Judge, entered an Order (DE#141) dismissing this case, with prejudice.[3]

Twenty months later Hilton filed a **Motion for Writ of Execution (DE# 143)** in this case, complaining that after the settlement was complete, a Clerk's filing fee [for an appeal taken by him in 2004 in the U.S. Court of Appeals for the Eleventh Circuit] was newly posted as a lien on his prison bank account. In his Motion for writ, Hilton argued that counsel should have known about the old appellate court lien and should have satisfied it as part of the monetary consideration which he [Hilton] was offered and paid in return for his Voluntary Dismissals, with Prejudice, of this case and Case 01-14148-Civ-Middlebrooks.

An Order (DE#144) was entered, referring the matter to the undersigned for all necessary and appropriate action in regard to plaintiff's Motion (DE#143). A hearing was scheduled, but was not held after defendants filed an Emergency Motion to cancel it (DE#149), and the plaintiff filed a Response (DE#150) stating in part that he had spoken to counsel on April 14, 2008, and that the

---

[2] At summary judgment there remained two defendants in this case, Lt. Riley Carter, and Corrections Officer Alina Rios. Plaintiff Hilton claimed that Conditions he experienced in Disciplinary Confinement violated his 8th & 14th Amendment rights. He gave an Affidavit swearing to bad conditions, which the defendants stated did not exist. On Summary Judgment, due to lack of a causal connection, defendants Carter & Rios prevailed on the 8th Amendment claim due to lack of evidence that they knew of allegedly un-constitutional conditions. However, the case survived summary judgment on the 14th Amendment claim against Carter & Rios who allegedly issued a false Disciplinary Report, where Hilton's conviction on the Disciplinary Report was overturned, but not until he had already spent 24 days in Disciplinary confinement in alleged poor conditions.

[3] Pursuant to the settlement, in which the court was not involved, this case, and Case No. 01-14148-Civ-Middlebrooks (Hilton v. DOC, et al.) were voluntarily dismissed, with prejudice, by plaintiff Hilton. The Court's CM/ECF docket, shows that Case No. 01-14148-Civ-Middlebrooks was dismissed, with prejudice, on July 26, 2006 (Order DE#147), pursuant to Hilton's Notice of Voluntarily Dismissal (DE# 146) which was dated 7/10/06, and filed with the Clerk on 7/13/06.

parties "agree to work out this problem" by May 19, 2008. Thereafter, the parties were unable to resolve their differences, and plaintiff Hilton filed a "Motion for Direct Verdict" (DE#157) stating that he wants the Court to enter an Order on his Writ of Execution, based on the written pleadings and exhibits.

## II.  DISCUSSION

**This Cause is presently before the Court upon Plaintiff's "Motion for Writ of Execution" (DE# 143),** with exhibits A-D (DE# 143 at pp.18-48), **and upon Plaintiff's "Motion for Direct Verdict" (DE# 157)** requesting adjudication of his Motion for Writ DE# 143 based on the filings and documents of record. In opposition to the plaintiff's Motion DE#143, the defendants filed a Response (DE#148) with exhibits A-D (DE#s 148-2 through 148-5)

### What the Documents of Record Show

On June 30, 2006, plaintiff Hilton executed a **"Release of All Claims"** styled <u>In the Matter of Perry Hilton 096132, Plaintiff vs. Department of Corrections, et al., Defendants</u>, **for Cases 03-14270-Civ-Moore and 01-14148-Civ-Middlebrooks.** (DE#143 at pp.19-21; DE# 148-2). It stated that Hilton, for the consideration of $2,000.00 "hereby discharges" [the DOC and its agents, servants, employees ...etc.,"of and from all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever"...etc..."in the complaints in the above captioned cases."

The Release states, "It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim," that the settlement is not an admission of culpability, and that the defendants/releasees "deny liability therefor and intend merely to avoid litigation and buy their peace."

The Release also states: that "it is understood and agreed" that the release and consideration paid for it extends to all claims which could have been asserted by "the undersigned" in [the two cases].

The Release provided that plaintiff Hilton agreed to file Voluntary Dismissals With Prejudice with the Court.

The Release further provided, as follows, verbatim: "<u>The undersigned expressly represents that he has no knowledge of any other liens or other claims which affect settlement all existing liens shall be paid out of the 2,000.00 consideration paid herein</u>."

Finally, the Release states: "<u>The undersigned further declares and represents that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere-recital</u>."

On June 30, 2006, AAG Maher wrote a letter to Hilton [then at Taylor CI] (DE#143, p.22). Ms. Maher referenced the Release Hilton had executed that afternoon, stated that a $2,000 check would be issued and returned to her in about 2 weeks, and also stated "<u>I will see that it is hand delivered to the [DOC's] Inmate Trust Section for deposit *with instructions to satisfy all liens and release the remainder of the funds for your use*</u>." The 6/30 Maher letter further stated that although preliminary indications were that Hilton's record did not preclude his transfer to SBCF, the matter of that transfer was not part of the settlement and could not be enforced or litigated as part of the settlement. Finally the 6/30 Maher letter told Hilton he needed to file Voluntary Dismissals in the two cases as soon as possible. As noted <u>supra</u>, both cases were voluntarily dismissed by Hilton, with prejudice. (<u>See</u> DE#143, this case, at pp.27 and 28).

A July 19, 2006 Letter from AAG Maher to Hilton [who by then was at SBCF] (DE#143, p.23) stated that the $2,000 check had been hand delivered to the Inmate Trust Section for deposit into his account, and that "<u>the outstanding liens will be satisfied and the remaining balance will be transferred to [SBCF] for deposit to your trust account at the private facility</u>." The 7/19/06 letter also referenced receipt of Voluntary Dismissals in the federal §1983 cases and of a "mandamus petition in Taylor County."

5

A July 26, 2006 Letter from AAG Maher to Hilton (DE#143, p.24) advised that "<u>the settlement check for $2,000 was deposited...and liens in the amount of $1486.54 have been satisfied. The remaining balance of $513.46 was forwarded to [SBCF] on July 24, 2006</u>." It references "Case No. 2006 CA 00423 A, 3d Jud.Cir. - Taylor Co." and the forwarding by AAG Maher of plaintiff's voluntary dismissal in the state matter to the Circuit Court.

Thereafter there was some confusion, and disagreement arose.

An August 30, 2006 Letter from AAG Maher to Hilton (DE#143, p.25) referenced a July 31, 2006 letter by Hilton. Therein, Maher stated that, in addition to the original balance of $513.46, an additional $166.50 was placed in Hilton's prison bank account. The additional $166.50 was for a "discrepancy" caused by "a filing fee that had previously been paid with outside funds but the DOC had not been notified." The 8/30/06 Maher letter stated: "<u>This therefore concludes the settlement agreement</u>."

Nearly a year later, in a June 26, 2007 Letter (DE#143, p.30), AAG Maher responded to a May 28, 2007 demand by Hilton for "reimbursement" of monies "taken from his settlement check to satisfy legal copy liens." In Paragraph 1 Maher stated that her review of the file did not show where any funds from the settlement check had been used to satisfy legal copy liens. In paragraph 2 Maher stated: "However, even if some of the liens were legal copy liens, I note that you agreed to payment of all outstanding liens at the time of the settlement." Maher further stated that it was her understanding that "all outstanding unpaid legal copy liens were voided after the Florida Supreme Court denied review of the First District Court's decision in <u>Smith v. DOC</u>, 920 So.2d 638 (Fla. 1st DCA 2005)(holding that administrative rule allowing the DOC to charge inmates for photographic copying services was an invalid exercise of delegated legislative authority); and Maher noted that any legal copy liens already paid were ruled not "subject to refund," under <u>Vale v. McDonough,</u> 958 So.2d 966, 32 Fla.L.Weekly D1212 (Fla. 1st DCA, May 8, 2007)(holding that the prior decision in <u>Smith</u> did not apply retroactively).

6

The June 26, 2007 Maher Letter outlined distribution of the $2,000 that had been paid to Hilton, stating that it was, as follows:

**Liens**

| | |
|---|---:|
| ID Cards | $ 1.35 |
| Postage | $ 11.39 |
| State Prison Litigation | $ 166.50 |
| Medical CoPayments | $ 21.30 |
| Federal Prison Litigation Liens | $1,120.00 |
| **Lien Balance** | **$1,486.54** |
| *(Remainder Left for Inmate Hilton's Use.................* | *$ 513.46)* |

   ($166.50 reimbursed for fee that was paid from another
   source was reimbursed to Hilton's prison bank account)

**Resulting in a Revised Lien Balance of...................  $1,320.04**
**Giving a Revised Remainder for Inmate Hilton's Use of....  $ 679.96)**

On February 14, 2008, a letter from AAG Maher (DE#143, p.31) responded to a February 1, 2008 letter from Hilton, complaining that he was now seeing deductions for a federal litigation lien which he thought had been paid through settlement funds. Maher's letter stated that she had inquired at SBCF, and was informed that the new deductions about which Hilton complained were a lien established for Eleventh Circuit Case 04-12510-B [sic]. [The record indicates that the $250 for the 2004 11th Circuit filing fee was in fact for USCA Case #04-15065 (incorrectly referenced in counsel's letters as USCA Case #04-12510-B)].[4] In her 2/14/08 letter, AAG Maher stated that she further determined that no federal litigation liens had been placed on Hilton's Prison Bank Account in 2004, 2005 or 2006, and that that newly posted lien for the 11th Circuit 2004 filing fee was not recorded with the DOC when the settlement occurred in 2006. Maher indicated in her 2/14/08 letter to Hilton that if the 11th Circuit lien had been posted against his prison bank account prior to the 2006 settlement the State would have paid it ("Had we been aware of this lien we would have pursued paying it at the time of settlement; however, since you still lawfully owe this lien, it must be paid. I trust that this information will resolve your concerns").

---

[4]   See Defendants' Response DE#148, p.2, footnote 1.

Finally, in a March 5, 2008 Letter (DE#143, p.36), AAG Maher responded to a letter from Hilton dated February 20, 2008 taking issue with her February 14 letter.  Maher's Response was that it had been Hilton's responsibility to bring outstanding liens to the state's attention at the time of settlement, that the 11th Circuit lien (delayed from 2004, and posted with the Florida DOC by 2008) had not been among liens pending against his prison bank account at the time of the settlement [in June/July 2006]. Maher further stated that the AAG's Office could not respond to a public records request made by Hilton because the agency did not have copies of litigation lien documents requested. Instead, Maher indicated that she requested Florida DOC documents, and determined that over the years the following cases by Hilton had had liens posted on his Prison Bank Account:

```
03-14270-Civ-Moore       District Ct      $ 150   *This Case
03-13492-D               Appeal           $ 105   [from 01-14148-Civ-Roettger]
03-20879-Civ-King        District Ct      $ 150
02-14559                 Appeal           $ 105   [from 01-02481-Civ-Seitz]
00-14009-Civ-DMM         Dist Ct          $ 150   [DMM = Donald M. Middlebrooks]
00-15385                 Appeal           $ 105   [from 00-14009-Civ-DMM]
01-2560-Civ-King         Dist Ct          $ 150
03-10305-C               Appeal           $ 105   [from 01-2560-Civ-King]
02-10148                 Appeal           $ 100   [from Order in 01-2481 Civ-PAS]
```
**Total Federal Litigation Liens       $1,120.00**

Maher further stated that she reviewed federal court dockets to cross check Hilton's known DOC Lien History for court filing fees against district court cases and appeals filed by him. She noted that in several cases and appeals it appeared that filing fee debts remained outstanding in those matters because the cases were not among those identified in DOC records as having liens posted. (Maher observed that it was likely that this occurred because the DOC did not receive lien orders from the particular courts issuing them).  Maher stated that those cases identified by her included:

```
Case   No. 00-03571   Dist.Ct.   [00-3571-Civ-Huck; §2254 Habeas Corpus]
Appeal No. 01-14951              [appeal from 00-3571-Civ-Huck]
Case   No. 01-02481   Dist.Ct.   [01-2481-Civ-Seitz; FOIA complaint]
Case   No. 01-14148   Dist.Ct.   [01-14148-Civ-DMM; §1983 complaint]
```

```
Appeal No. 03-13493            [Interlocutory Appeal, in 03-20879-King]
Appeal No. 04-10026            [??]5
Appeal No. 04-12510            [case incorrectly cited in AAG letters;
                                  Appeal in 03-20879-civ-King]
Appeal No. 04-15065            [the lien triggering this matter; Appeal
                                  in 03-20879-civ-King]
```

From the record it is readily apparent that the parties agreed on a fixed sum of money, $2,000.00, in exchange for which plaintiff Hilton agreed to dismiss, with prejudice, this case and Case No. 01-14148-Civ-Middlebrooks. It is also apparent from the Release signed by Hilton, and from the exchange of letters between Hilton and AAG Maher, that it was agreed on behalf of the defendants that the liens that were lodged against Hilton's prison bank account at the time of the settlement would be paid out of that $2,000 sum, and that those funds which were left over from the $2,000 deposit after the posted liens were satisfied would remain in Hilton's account and be available for his use to cover future expenditures by him.

The record shows that the lien balance reflected on DOC records was $1,486.54 (including $1,120 for federal cases, $166.50 for state litigation, $1.35 for ID cards, $11.39 for postage, and $21.30 for medical co-payments). This meant that $513.46 would have been left over for Hilton's use. When it was discovered that the $166.50 lien for the state litigation had been paid in full from an outside source, that increased the left over funds available for Hilton's use from $513.46 to $679.76.

In his Motion for Writ of Execution, plaintiff Hilton now requests the following relief (<u>see</u> DE#143, p.16):

> 1. A declaration that the acts and omissions described in his motion violated his constitutional rights and the laws of the United States.

---

[5] It is appears that AAG Maher's reference to Appeal No. 04-10026 may include a scrivener's error. Hilton had an Interlocutory Appeal, No. 04-10029-C, during the proceedings in this case.

9

    2.    An injunction ordering defendants to "pay all the liens prior to settlement agreement."

    3.    For the Court to hold the defendants in contempt of court for not paying the liens.

    4.    $4,000 in compensatory and punitive damages "for the physical mental and emotional injuries sustained for harm occurred by noncompliance and breach of the settlement agreement.

    5.    Attorney's fees.

    6.    Reimbursement of "all money deducted from his prison account and 15% interest to be paid from the resolution of the cases June 30, 2006."

    7.    Any additional relief this Court deem just, proper, and equitable.

("Relief," DE#143 at p.16). In the body of the Motion for Writ of Execution, the plaintiff also asks the Court to "reinstate the above lawsuit until the on going violation is corrected under 18 U.S.C. §3626(b)(3)."

## Analysis and Recommendation

The plaintiff's and defendants' exhibits contain an October 5, 2004 letter from Clerk of Court for the U.S. Court of Appeals for the Eleventh Circuit, directed to the Warden of Mayo CI, establishing a $250 debt for the filing fee in USCA Case #04-14065-B, and setting out the statutorily established mathematical formula by which partial payments were be to made until the entire $250 was paid. (DE#143 at p.47; DE# 148-5 at p.8). The matter fell through the cracks. (There may have been confusion, since Case 04-14065 was just 1 of 4 appellate cases brought by Hilton in connection with his district court case No. 03-20879-Civ-JLK). The defendants' exhibits show that on August 3, 2006 (more than a month after the June 30, 2006 Release, and three weeks after Hilton's July 10, 2006 Notices of Voluntary Dismissal in this case and in case 01-14148-Civ-Middlebrooks), the Eleventh Circuit sent a Letter and an Invoice to the Warden of South Bay CF, stating that there was a "250.00 Docket filing fee 10/5/04" corresponding to Dkt.No.

10

04-14065, and that there was a "250.00 Current balance due." (DE#148-5 pp. 5 and 6). It appears that that notice also fell through the cracks, since no deductions were taken from Hilton's prison bank account for the fee in Case 04-14065 until late January or early February 2008 (a year and a half after consummation of the settlement). When the first deduction ($10.00) was made, Hilton brought the matter to the attention of a Manager of a DOC Business Office by way of his 2/1/08 Inmate Request, stating that the deduction for a federal lien must have been a mistake, since he had been at South Bay CF since July 2007 and had had no such deductions during that time. (DE#148-5 at p.4). Hilton also brought the matter to the attention of AAG Maher in a letter dated February 5, 2008 (DE#148-5, p.2). Among Hilton's exhibits are a "Warden's Transaction Receipt" showing a withdrawal check on Feb 04, 2008 for $10.00 for "Court of Appeals/Hilton Perry #096132." (DE#143, p. 33). Hilton also has submitted a receipt from the Eleventh Circuit dated 2/25/08, which reflects the appellate court's receipt #44745 dated 2/21/08 for a $10.00 payment by check in partial payment of the "250.00 Docket filing fee 10/5/04," and a resulting "240.00 Current balance due." (DE#143, p.32).

A *pro se* inmate litigant is responsible for managing his own private lawsuits, and monitoring the debits, credits, and balance for his inmate bank account. In Hilton's federal cases, Orders entered at the outset of each case ruled on his *In Forma Pauperis (IFP)* motions, and where debts corresponding to filing fees were incurred, the plaintiff was informed by court order what was due and owing (see e.g., Order DE#4 in this case). It behooves inmate/plaintiffs, including Mr. Hilton, who in this instance is a seasoned *pro se* litigant (see footnote 1, supra), to at the very least keep track of all of the filing fees for which he has incurred debts for federal district court cases, and federal appeals cases, and also to keep track of what debits have been removed from his prison account to satisfy those liens. Hilton knows full well that upon the granting of a motion to proceed *IFP* in the district or appellate court there is no free ride. The debt for the filing fee in each district court case filing, and for each appeal is incurred, remains owing, and results in partial fee payments being deducted from the inmate bank account each time that there are sufficient funds from which to make a withdrawal in accordance with a

11

statutory formula. If Hilton had an appeal [USCA Case #04-15065] relating to his district court case 03-20879-Civ-King, it was his responsibility to know that the filing fee was incurred, and to know that [as the result of some mistake] he had not had any deductions for it taken from his prison bank account prior to the June 2006 settlement, which he now claims was breached.

As noted, failure to begin taking deductions from Hilton's prison account prior to February 2008 for the filing fee in USCA Case #04-14065 may have been the result of clerical error. There is no suggestion or evidence of record, however, that prior to Hilton's February letters to AAG Maher, the defendants, through counsel, had any reason to know that a federal appeals court filing fee, which had not been posted as a lien on Hilton's Inmate Account, was due and owing.

Hilton in pertinent part asks that defendants be ordered to "pay all liens prior to settlement agreement." (Relief, DE#143, p.16). By this, he presumably means the filing fee from USCA Case No. 04-14065-B, and any other filing fees in "pre-June 30, 2006" federal district or appellate court cases which, for whatever reason or reasons were not processed and applied as liens to his account. If other "old" fees are outstanding, they have not been charged to him.

It is not logical to conclude, based on review of the plaintiff's own exhibits, that the defendants intended as part of the agreed settlement, to pay Hilton anything other than $2,000.00 to secure dismissals, with prejudice, of this case and case No. 01-14148-Civ-Middlebrooks. Moreover, this was the amount to which Hilton agreed by afixing his signature to the "Release of All Claims" on June 30, 2006.

The record indicates that had the $250 debt (which Hilton incurred by bringing appeal #04-14065-B as one of four appeals from orders in Case 03-20879-Civ-King) been brought to Counsel's attention at the time of settlement, steps would have been taken to have it posted on Hilton's Inmate Lien Account as an existing lien, and it then would have been paid from the $2,000 along with the other $1,486.54 in liens that were recognized at the time of the settlement. As things stood (without recognition of the outstanding $250 filing fee), Hilton was left with $679.96

for his discretionary use from the $2,000.00 amount which was negotiated and he agreed to in writing. If the $250 fee about which he now complains had been lodged on the Inmate Lien Account as an outstanding lien before June 2006, then Hilton would instead have had $454.96 in discretionary funds left for his use ($679.96 less $250.00).

Hilton's problem is that funds left over from the $2,000 check issued in July 2006 (an adjusted remainder of $679.96) may by now have been spent; yet he remains faced with the duty to pay, by installment, what is still owing toward the $250 fee in Case 04-14065-B.

Hilton may now be faced with some inconvenience, if between July 2006 and 2008 he spent all of the $679.96 that was available for his discretionary use. This could mean that there are not now sufficient funds for him to buy discretionary items (e.g., canteen purchases), and still have enough money left in his account to satisfy the filing fee once it was posted on his Inmate Lien Account. (A lien posted against his account for the appellate court filing fee would restrict what funds are available for his discretionary use). The fact remains that regardless of whether the $250.00 filing fee had been paid off in July 2006, or is paid off by partial installments that commenced in February 2008, Hilton stands monetarily in the same position. Either way, he would have had to pay the fee, then (in 2006), or now (by installments, beginning in 2008).

With regard to plaintiff's contention that, pursuant to 18 U.S.C. §3626(b), this case, which was closed, should be reinstated until such time that "the ongoing violation is corrected," and with regard to his request that the defendants be held in contempt of court, the plaintiff is entitled to no relief.  Here, the settlement (dismissing cases in exchange for $2,000.00) was a private agreement between the parties;[6] and there was no violation of Hilton's constitutional rights, nor is there any ongoing constitutional violation.[7]

---

[6] The Court was not involved in the agreement; and the Release signed by Hilton on June 30, 2006, was not made part of the court record at the time of agreement between the parties, and closure of the two federal cases.

[7] Title 18, Section 3626, captioned "Appropriate remedies with respect to prison conditions," which is cited by the plaintiff, is a provision of the Prison Litigation Reform Act of 1995 ("the PLRA"). The Prison Litigation Reform

In addition, there is no evidence of physical or emotional injury for which Hilton claims the right to compensation. Also, there is no evidence of actions by defendants or counsel upon which punitive damages could be awarded. Plaintiff, who is proceeding *pro se*, is not entitled to attorneys fees which he demands; and finally, given the circumstances, he clearly is not entitled to relief in the form of reimbursement of "all money deducted from his prison account" after June 30, 2006, and payment to him of 15% interest, which he also demands.

### III. CONCLUSION

It is therefore recommended: 1) that plaintiff's "Motion for Direct Verdict" (DE# 157) be granted, solely to the extent that he requests adjudication of his Motion for Writ based on the filings and documents of record; 2) that plaintiff's Motion for Writ of Execution (DE# 143) be denied; and 3) this case remain closed.

---

Act of 1995 ("PLRA"), as enacted on April 26, 1996, significantly altered a prisoner's right to bring civil actions *in forma pauperis*. As part of the Act, Congress limited the scope of prospective relief that courts may grant in cases challenging prison conditions. Under the PLRA, Section 3626(b)(3) provided that prospective relief terminate unless a judge makes findings that it "extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." See Cason v. Seckinger, 231 F.3d 777, 784-85 (11 Cir. 2000). As noted in Cason, 231 F.3d at 795-96, the PLRA distinguishes between a "private settlement agreement" entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled," and a "consent decree," which is defined as any other relief "entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements" Id. (citing 18 U.S.C. §§3626(g)(6), and (g)(1), respectively). The Court in Cason noted that while consent decrees and private settlement agreements are both based at least in part on an agreemnt between parties, Congress in enacting the PLRA sought to distinguish between the two terms by providing the explicit definition that consent decrees "do[ ] not include private settlements." Cason, supra at 796. Private settlement agreements are "not subject to judicial enforcement." 18 U.S.C. §3626(g)(6); Cason, supra at 796.  Under the PLRA, the only remedies for breach of a private settlement agreement are "the reinstatement of the civil proceeding that the agreement settled," or a state law claim. Cason, supra, at 796 (citing 18 U.S.C. §3626(c)(2)(A), (c)(2)(B); and United States v. City of Miami, 664 F.2d 435, 439 (5 Cir. Dec.1981)(*en banc*)).

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: August 27th, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Perry T. Hilton, Pro Se
DC# 096132
South Bay Correctional Facility
600 U.S. Highway 27 South
South Bay, FL 33493

Susan A. Maher
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
The Capitol, Suite PL-01
Tallahassee, FL 32399-1050

Michael Picton Rudd, Esquire
150 West Flagler St., Suite 1450
Miami, FL 33130-1536


Honorable K. Michael Moore,
United States District Judge